**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JASON RELERFORD, OTIS NUNN, JR.,
WARREN SOUTHALL, RICHARD JOHNSON
and ENTRICE MITCHELL,

       Plaintiffs,

v.

       Case No. 11-13965
       Hon. Lawrence P. Zatkoff

CITY OF FLINT, JOE PILARA, and
MIKE BROWN,

       Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on November __, 2011.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter comes before the Court on Defendants' Motion for Dismissal of Plaintiff Relerford's Claims for Failure to State a Claim or, Alternatively, for Summary Judgment [dkt 5]. The Motion has been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L. R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the brief submitted. For the reasons set forth below, Defendants' Motion is GRANTED.

## II. BACKGROUND

### A. FACTUAL BACKGROUND

The present case involves claims brought against Defendants City of Flint (the "City"), Joe Pilara, and Mike Brown by employees of the City based on race discrimination and harassment. According to Plaintiffs, Plaintiffs are African American employees of the City, and based on the Court's review of the record, are all currently employed by the City in its Water and Sewer Departments. Pilara and Brown are Caucasian supervisors in the Water and Sewer Departments.

Plaintiffs' highlight the following incidents purportedly exhibiting racial harassment by Defendants: (1) a doll head was placed on the top of a cement pillar in front of where the African American work crews park their vehicles; (2) derogatory language used by other employees and management, including "[n]iggers" and "[s]pooks"; (3) the rules are enforced differently for African Americans than for Caucasian employees; and (4) management and other employees harass the African American employees." A written complaint of racial discrimination was also filed with the City in September of 2009. An investigation followed. Employees of the City sought information regarding the findings of the investigation in September of 2010. In response, a memo was provided to the employees by the City indicating that the City had not yet received a report from the attorney conducting the investigation. As of July 2011, Plaintiffs claim that the City has taken no action in response to the complaint filed in 2009, and the racial harassment at the Water and Sewer Departments continue.

As to Plaintiff Jason Relerford, he has a longstanding term of employment with the City's Water and Sewer Departments. During his employment history, Relerford's employment records indicate that he had been disciplined twelve times by the City from 1997 to 2007, including failing

2

to timely report his absence from work, misappropriating the use of City equipment, and sleeping on the job. On January 9, 2007, Relerford was terminated for attempting to bribe a City employee. On January 31, 2007, the City and Relerford entered into the first of several written Last Change Agreements ("LCA"). This first LCA permitted Relerford to return to work under a last chance employment period, expiring January 30, 2009.

Upon returning to work, Relerford alleges that he applied for a promotion in 2008 to the Sewer and Maintenance Construction Foreman position.[1] Relerford claims a Caucasian individual, who had less seniority and qualifications, was promoted instead of Relerford by Pilara because Relerford is African American. Relerford also describes a second similar incident denying him a position as a supervisor.

After the initial January 31, 2007, LCA, it appears to the Court that due to Relerford's continued violations under the LCA, he continued to work under another LCA entered between the parties on January 29, 2009. In August of 2010, the City and Relerford then entered into a written agreement entitled, "Last Chance Settlement Agreement-Fulfilment of Obligations" ("LCA Settlement Agreement"). The LCA Settlement Agreement terminated the LCA entered into between the parties on January 29, 2009. The LCA Settlement Agreement also contained a release and waiver section, providing:

> 4. **Release and Waiver.** In consideration of the foregoing, the Employee hereby releases and forever discharges, indemnifies and

---

[1] Plaintiff Otis Nunn, Jr. also sought this promotion, but was purportedly denied because Nunn is African American. Plaintiff Warren Southall was promoted to a position as foreman in the Water Department on approximately June 18, 2009. Southall was purportedly told by Brown that he was not Brown's choice for the position and it was Southall's employment exam scores that created the basis for his promotion. Plaintiffs also claim that Southall was treated differently than the Caucasian foremans.

>   holds harmless the Employer, its Employees, Agents and/or Officials; the Union and/or any of their Officers, Employees and/or Agents from any and all actual and potential claims, complaints', demands, causes of action, damages, costs, expenses, fees, and other liabilities of every sort and description whatsoever, including, without limitation, claims based on preexisting acts occurring at any time up to the date of the executed Agreement.

Def.'s Mot. Sum. J. Ex. B (emphasis in original). The LCA Settlement Agreement was signed by Relerford, Relerford's Union representative, and Donna Poplar, an employee of the City.

**B. PROCEDURAL BACKGROUND**

On September 12, 2011, Defendants removed Plaintiffs' case from the Michigan Genesee County Circuit Court. On September 16, 2011, Defendants filed the instant Motion. Defendants seek dismissal of only Relerford's claims based on three grounds: (1) Relerford signed a release and waiver of his claims against Defendants; (2) Relerford did not obtain a right to sue letter from the Equal Employment Opportunity Commission ("EEOC") prior to asserting his claims under Title VII of the Civil Rights Act of 1964 ("Title VII"); and (3) Relerford incorrectly asserts individual claims against Defendants Pilara and Brown.

Before filing a response to Defendants' Motion, Plaintiffs filed a first-amended Complaint. Plaintiffs' first-amended Complaint alleges five claims, including Relerford's claim for failure to promote under 42 U.S.C. § 1983 and the Michigan Elliott-Larsen Civil Rights Act ("MCRA") and Relerford's claims for failure to promote and race-based hostile work environment claim under Title VII. Plaintiffs also attached Relerford's Notice of Right to Sue Letter and clarified that Relerford was not asserting individual claims against Defendants Pilara and Brown under Title VII. Following Plaintiffs' first-amended Complaint, Plaintiffs' response brief and Defendants' reply brief concede that the additional clarity of the first-amended Complaint and the attached Notice of Right to Sue

Letter resolve Defendants' second and third ground for dismissal. Therefore, the only remaining issue before the Court is whether the release and waiver signed by Relerford warrants dismissal of his claims.

### III. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.34[2] (3d ed. 2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(d).

In treating the motion as one for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

5

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Turning to the only issue remaining before the Court, whether Relerford's discrimination claims have been released depends on first determining whether the contract language in the LCA Settlement Agreement is unambiguous. *See UAW Local 540 v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999). The Court next will consider whether the release and waiver of Relerford's employment-related discrimination claims was knowingly and voluntarily entered into between him and the City. *Sako v. Ohio Dep't of Admin. Servs.*, 278 Fed.Appx. 514, 517 (6th Cir. 2008) (quoting *Shaheen v. B.F. Goodrich Co.*, 873 F.2d 105, 107 (6th Cir. 1989)). If the release and waiver was

knowingly and voluntarily entered, the Court will enforce it. *Id.* To determine whether a release is knowing and voluntary, the Court considers the following factors:

> (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.

*Id.* at 518 (quoting *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995)).

In reviewing the LCA Settlement Agreement, the Court finds that the contract language is unambiguous. The release and waiver section begins by stating that the "Employee hereby releases, and forever discharges . . . the Employer [and] its Employees . . . from any and all actual and potential claims." As Defendants point out, the phrase "any and all", which modifies "actual and potential claims", is subject to only one interpretation. The language is clear that any and every claim Relerford may have against his employer and its employees is covered.

Finding that the LCA Settlement Agreement's language is unambiguous, the Court also finds that Relerford knowingly and voluntarily entered into the release and waiver. Turning to the first of the five factors that guide this Court's analysis, Relerford has a highschool education, has been involved in union practices, and has read and signed other agreements containing similar language with the City. Such a background and education indicates that he was able to understand the language contained in the LCA Settlement Agreement. While Plaintiffs assert that Relerford is not an expert on contracts bears some weight on this factor, the Court declines to find so. Many individuals who enter valid enforceable contracts on a daily basis are not experts. If only contract experts could knowingly and voluntarily enter into contracts, this Nation's commerce would halt.

As to the amount of time Relerford had to consider the release and waiver (the second

factor), Plaintiffs do not allege the time period for which Relerford took to consider the release and waiver. The LCA Settlement Agreement, however, is signed by Relerford's union representative and there are no allegations that Defendants instructed Relerford he could not consult a lawyer regarding the LCA Settlement Agreement.

As to the clarity of the release and waiver (the third factor), as the Court has determined, the release and waiver is clear and unambiguous. Nonetheless, Relerford was surely able to understand the breadth of the release and waiver section by the phrase "other liabilities of every sort and description whatsoever, including without limitation, claims based on preexisting acts occurring at any time up to the date of the executed Agreement" following "any and all" claims. Furthermore, Plaintiffs' argument that the release and waiver does not specifically identify Title VII claims or discrimination claims as included, and therefore is unclear, is unconvincing. Rather, the Court finds that "any and all" claims and "other liabilities of every sort" include Relerford's Title VII claims and discrimination claims. *See Davis v. Ford Motor Co.*, No. 08-352-C, 2009 U.S. Dist. LEXIS 16896, 2009 WL 577262, at *2 (W.D. Ky. Mar. 5, 2009) ("The phrase 'I waive and release any and all rights or claims I may have against the Ford Motor Company' is broad and includes the plaintiff's present Title VII claim.").

As to the consideration given for the release and waiver (the fourth factor), Relerford was released from the terms of his LCA early. While the parties dispute the extent of the benefit this provides Relerford, Relerford had an extensive disciplinary history and had been almost terminated under prior LCAs. Being released early from the terms of his LCA provided him some benefit, and thus, the Court finds valuable consideration to support the release and waiver. *See Gen. Motors Corp. v. Dep't of Treasury, Revenue Div.*, 466 Mich. 231, 239 (2002) ("[A] cent or a pepper corn,

in legal estimation, would constitute valuable consideration.").

In considering the totality of the circumstances (the fifth factor), the Court finds it significant to note that the entire LCA Settlement Agreement was contained on a single page written in English. This is not a multi-sectioned agreement spanning numerous pages and containing definitions and appendices. There are only four sections, of which the fourth and final section was the release and waiver. The single page does not contain a significant amount of text, thus making the seven line paragraph containing the release and waiver a significant portion of the LCA Settlement Agreement. The release and waiver section is also typed in the same size text as the three other sections and is placed directly above the signature block. Thus, it appears to the Court that one reviewing the LCA Settlement Agreement would find the section and realize its importance. Furthermore, at the time of signing the LCA Settlement Agreement, Relerford was aware that he had potential discrimination claims as shown by the written complaint of racial discrimination filed in September of 2009 and the investigation that followed.

As such, the Court finds that the broad language in the release and waiver unambiguously includes Relerford's racial discrimination claims asserted in this case and that Relerford knowingly and voluntarily entered into the LCA Settlement Agreement containing the release and waiver. *See Sako v. Ohio Dept. of Admin. Servs.*, No. 06-0728, 2007 WL 1500905, at *7 (S.D. Ohio May 21, 2007) (finding that a plaintiff, whose primary language was French, knowingly and voluntarily waived his rights to sue when the settlement agreement was a little over a page long and contained no technical language, he did not and was encouraged not to seek legal counsel, and the plaintiff was in serious financial need). Accordingly, Relerford has released his racial discrimination claims based on any acts prior to August 16, 2010. Because Relerford's discrimination claims are based

on conduct that occurred in 2008 and 2009, Relerford's claims are dismissed as a matter of law.

## V. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' Motion for Dismissal of Plaintiff Relerford's Claims for Failure to State a Claim or, Alternatively, for Summary Judgment [dkt 5] is GRANTED.  Plaintiff Relerford's claims are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.


                                          S/Lawrence P. Zatkoff
                                          LAWRENCE P. ZATKOFF
                                          UNITED STATES DISTRICT JUDGE

Dated:  November 10, 2011

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on November 10, 2011.


                                          S/Marie E. Verlinde
                                          Case Manager
                                          (810) 984-3290